UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TERRANCE HARDIN #348296 ,

        Plaintiff,         Case No. 2:10-cv-48

v.         Honorable R. Allan Edgar

RONALD FIELDING, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e©. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bergh and Frontera. The Court will serve the complaint against Defendants Fielding, Adams, Masters, Bone, and Rondeau.

**Discussion**

I. Factual allegations

Plaintiff Terrance Hardin #348296, an inmate at the Ionia Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Officer Ronald Fielding, Resident Unit Officer Steve Adams, Resident Unit Officer R. Masters, Resident Unit Officer Unknown Bone, Sergeant M. Rondeau, Dr.. Fernando Frontera, and Warden David Bergh. In his complaint, Plaintiff alleges that on March 26, 2008, Defendant Fielding came to pick up Plaintiff's tray and stated that Plaintiff had threatened to kill him and to throw "piss" on him. Defendant Fielding then wrote a misconduct ticket on Plaintiff for threatening behavior. Plaintiff believes that Defendant Fielding's conduct was motivated by a desire to retaliate against him for his use of the grievance process.

Plaintiff filed a grievance on Defendant Fielding on April 2, 2008, which was denied on April 11, 2008. Plaintiff filed step II and III appeals, which were also denied. On April 4, 2008, Defendant Fielding served Plaintiff his lunch tray. Plaintiff subsequently became sick to his stomach. Plaintiff requested medical attention, and was told by Nurse Clark that he might have the flu. Plaintiff states that the next day, he began to defecate blood and kited health services. A stool sample was ordered, but Plaintiff was not given painkillers as he requested. A stool sample was obtained from Plaintiff on April 23, 2008. Plaintiff believes that Defendant Fielding tampered with his food in order to retaliate against him for his use of the grievance process. Plaintiff filed a grievance regarding this issue and appealed the denial to step III.

Plaintiff alleges that on April 18, 2008, Defendant Adams served him lunch, after which Plaintiff became nauseated and light-headed. Plaintiff asked to see a nurse, but no nurse ever

came to see Plaintiff. On May 13, 2008, Defendant Masters denied Plaintiff his breakfast, but served Plaintiff his lunch, after which Plaintiff experienced stomach pain and a numb, tight feeling in the veins on the left side of Plaintiff's body. Plaintiff's request for a nurse was ignored. Plaintiff believes that this conduct was motivated by a desire to retaliate against Plaintiff for filing grievances on Defendant Masters' co-workers. Plaintiff filed a grievance regarding this issue and appealed the denial to step III.

On May 23, 2008, Defendant Masters served Plaintiff food loaf for breakfast by opening Plaintiff's food slot and throwing the food on the floor. Plaintiff had been placed on food loaf at the request of Defendant Masters. Plaintiff attempted to talk to Defendant Masters about the incident when lunch was being passed out and Defendant Masters called Plaintiff a "nigger" and ordered him to stand up against the wall if he wanted to eat. Defendant Masters then placed Plaintiff's food loaf, which was only wrapped in a thin layer of cellophane, on the filthy slot of the cell door in violation of policy. Plaintiff informed Defendant Masters of this fact and he returned and pulled the meal from the slot. Plaintiff states that the food loaf was smashed and the wrapping was torn. Plaintiff refused to eat the food loaf and the conversation between himself and Defendant Masters became heated. Defendant Masters then ordered all water to Plaintiff's cell be turned off. Plaintiff asked to see the Sergeant. Plaintiff also asked to use the bathroom and for a drink of water. Defendant Masters called Plaintiff a "nigger" and said that he could drink from the toilet. Defendant Masters continued to tamper with Plaintiff's meals on June 2, 2008, and June 7, 2008. Plaintiff filed grievances regarding each incident, to no avail. Plaintiff asserts that Defendant Masters is known for tampering with prisoners' food and was caught doing so on camera in either 2007 or 2008.

On May 10, 2008, Defendant Bone and Resident Unit Officer Exelby refused to give Plaintiff his food tray. Plaintiff alleges that on May 18, 2008, Defendant Rondeau came to his cell and interviewed Plaintiff regarding a grievance he had written on Defendant Masters. When Plaintiff refused to sign off on the grievance, Defendant Rondeau became irate and stated, "Nothing to add gunslinger, good, we'll keep on poisoning you." Plaintiff filed a grievance. On May 20, 2008, Plaintiff kited health services, complaining of stomach and head aches, especially after eating meals. Plaintiff was never seen by health care, prompting him to file a grievance. On May 28, 2008, Defendant Rondeau failed to inform Plaintiff of his hearing, and falsely reported that Plaintiff had refused to go to his hearing. Plaintiff kited health services again, and was scheduled for a colonoscopy and uodenoscopy on June 4, 2008. Following the tests, the doctor reported no findings of ulcers or other diseases, and stated that it could be Plaintiff's diet, stating that Plaintiff should have a lower bowel exam. On June 5, 2008, Defendant Bone served Plaintiff his supper, after which Plaintiff became nauseated and lightheaded, and had to lie down.

On June 16, 2008, Defendant Frontera informed Plaintiff that he had H. Pylori. On June 19, 2008, Defendant Frontera informed Plaintiff that he would receive a lower bowel exam. When Plaintiff asked if he would be treated for the H. Pylori, Defendant Frontera denied ever telling Plaintiff of such a diagnosis. On July 17, 2008, Plaintiff received a lower bowel exam at Foote Hospital in Jackson, Michigan. The test failed to reveal any cause for Plaintiff's symptoms. During rounds, Plaintiff asked Defendant Bone why he continued to poison Plaintiff's food, and he responded that he was "doing no such thing." Plaintiff asked Defendant Bone if he would stop, and Bone responded that he would when Plaintiff was dead.

Plaintiff alleges that on June 9, 2008, Defendant Fielding was escorting him back to his cell from a doctor callout. When they arrived at Plaintiff's cell, Defendant Fielding went down to take the belly chains off via the food slot. While doing so, Defendant Fielding touched Plaintiff's buttocks. Plaintiff jumped forward a bit, thinking that it was a mistake. Defendant Fielding then extended his arm into the slot and grabbed Plaintiff's buttocks. Plaintiff attempted to twist away and asked Defendant Fielding what he was doing. Defendant Fielding did not reply and walked away from Plaintiff's cell.

Plaintiff filed a "medical malpractice" grievance on Defendant Frontera on June 21, 2008, which was denied. Plaintiff appealed the denial to step III, which was denied on October 10, 2008. Plaintiff believes that Defendant Bergh was indifferent to his complaints and failed to protect Plaintiff from the misconduct of his subordinates. Plaintiff seeks damages and equitable relief.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct.

at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if Plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Bergh was personally involved in the activity which forms the basis of his claim. Defendant Bergh's only role in this action involves the denial of administrative grievances or the failure to act. Defendant Bergh cannot

be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendant Bergh are properly dismissed for lack of personal involvement.

Plaintiff claims that Defendant Frontera violated his right to obtain medical treatment to address his symptoms. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In this case, a review of the attachments to Plaintiff's complaint show that he kited health care complaining of blood in his stool on April 17, 2008, and was scheduled to see a nurse. (Plaintiff's Exhibit N.) On May 20, 2008, Plaintiff again kited health services and was scheduled for a sick call on May 21, 2008. In addition, Plaintiff was listed for an "MD chart review" to see whether lab work should be reordered. The respondent further noted that Plaintiff's lab work had been discontinued on April 29, 2008, when Plaintiff indicated that he did not want it done. (Plaintiff's Exhibit O.) On May 26, 2008, Plaintiff kited health care complaining that he had been defecating blood for two months and that he had not been provided with any treatment or service. Plaintiff was informed that the "Doctor put in a consult to receive a colonoscopy and uodenoscopy" and that staff was awaiting approval. (Plaintiff's Exhibit P.) Plaintiff alleges in his complaint that he was seen by Defendant on June 16, 2008, and that Defendant Frontera informed Plaintiff that he had H. Pylori. On June 19, 2008, Defendant Frontera informed Plaintiff that he would receive a lower bowel exam. When Plaintiff asked if he would be treated for the H. Pylori, Defendant Frontera denied ever telling Plaintiff of such a diagnosis. This is the extent of Plaintiff's allegations against Defendant Frontera. In addition, Plaintiff concedes that none of the tests performed on Plaintiff ever revealed any disease process.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466

F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Based on a review of the record, the court concludes that Plaintiff's allegations against Defendant Frontera do not amount to deliberate indifference. Therefore, Defendant Frontera is properly dismissed.

Plaintiff claims that Defendant Fielding sexually assaulted him by grabbing his buttocks briefly on June 9, 2008. As noted above, Plaintiff alleges that Defendant Fielding was escorting him back to his cell from a doctor callout. When they arrived at Plaintiff's cell, Defendant Fielding went down to take the belly chains off via the food slot. While doing so, Defendant Fielding touched Plaintiff's buttocks. Plaintiff jumped forward a bit, thinking that it was a mistake. Defendant Fielding then extended his arm into the slot and grabbed Plaintiff's buttocks. Plaintiff attempted to twist away and asked Defendant Fielding what he was doing. Defendant Fielding did not reply and walked away from Plaintiff's cell.

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a

sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F.

App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts). The court concludes that Plaintiff's claim that Defendant Fielding briefly grabbed his buttocks while removing his handcuffs, without more, is insufficient to state a claim under the Eighth Amendment.

Plaintiff's remaining claims that Defendants Fielding, Adams, Masters, Bone and Rondeau retaliated against him by poisoning his meals on numerous occasions are nonfrivolous and may not be dismissed upon initial screening.

**<u>Conclusion</u>**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Bergh and Frontera will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Fielding, Adams, Masters, Bone and Rondeau with regard to Plaintiff's claims that they retaliated against him by poisoning his meals.

An Order consistent with this Opinion will be entered.


Dated:      11/22/2010              /s/ R. Allan Edgar
                                    R. Allan Edgar
                                    United States District Judge